IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JIMMY L. CHANDLER                                               PLAINTIFF

vs.                                                    CIVIL ACTION NO. 1:10CV060-SAA

MICHAEL J. ASTRUE,
**Commissioner of Social Security**                             DEFENDANT

# MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Jimmy L. Chandler for a period of disability and disability insurance benefits (DIB) under Section 216(I) and 223 of the Social Security Act and for supplemental security income payments under Section 1614(a)(3) of the Act. Plaintiff applied for benefits on April 26, 2006, alleging that he became disabled on January 15, 2006 due to a torn rotator cuff and cervical disc disease. (Tr. 77-83, 84-89, 106-09). The plaintiff's claim was denied initially and on reconsideration. The plaintiff requested a hearing and testified at the hearing held on February 12, 2009. (Tr. 17-37). Additionally, a vocational expert was present and answered a few limited questions. The ALJ issued an unfavorable decision on July 23, 2008. (Tr. 8-16). The Appeals Council denied plaintiff's request for review on September 10, 2009. (Tr. 5-7). The plaintiff retained his current counsel, timely filed the instant appeal from the Commissioner's decision, and it is now ripe for review.

## FACTS

The plaintiff was born on December 7, 1957 (Tr. 19) and completed the twelfth grade (Tr. 20). He was fifty years old at the time of the hearing. (Tr. 19). His past relevant work was

as a vacuum machine operator at Bryan Foods where he worked for thirty (30) years. (Tr. 20). He contends that he became disabled on January 15, 2006 when he began experiencing problems with his back and shoulders. (Tr. 169-71).

The ALJ determined that the plaintiff suffered from "severe" impairments, including the residual effects of a torn rotator cuff and degenerative disc disease (Tr. 10), but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003). The ALJ held that the plaintiff retains the Residual Functional Capacity (RFC) to perform a limited wide range of "light" level work but is limited to jobs that allow a sit or stand option. (Tr. 11). In light of testimony by a vocational expert [VE] at the hearing, the ALJ found plaintiff incapable of performing his past relevant work, but capable of performing jobs that exist in significant numbers in the national economy and therefore not disabled under the Social Security Act. (Tr. 14).

Plaintiff claims the following errors:

1. Because the ALJ did not properly evaluate the severity of all plaintiff's medically-established severe impairments, his decision is unsupported by the evidence.

2. The ALJ did not properly assess plaintiff's residual functional capacity in light of the consulting physician's opinions.

3. The ALJ erroneously found plaintiff not disabled at step 5 despite the testimony of the vocational expert.

4. The ALJ should have found plaintiff disabled as of his fiftieth birthday.

Docket 8, p. 1.

## STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[2] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2003).

[4] 20 C.F.R. §§ 404.1520, 416.920 (2003).

[5] 20 C.F.R. § 404.1520(d), 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525, 416.925 (2003).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2003).

[7] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2003).

he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since the alleged onset date, January 15, 2006. (Tr. 10). At step two, the ALJ found that plaintiff has severe impairments that include the residual effects of a torn rotator cuff and degenerative disc disease and that plaintiff's claimed bilateral carpal tunnel syndrome was not a medically determinable impairment. *Id.* He held at step three that plaintiff does not have an impairment or combination of impairments that meet or medically equal any impairment listed at 20 C.F.R. Pt. 404, Subpart P., App. 1. (Tr. 11). The ALJ found that plaintiff has the RFC to perform a limited range of light exertional work and that he can "lift and carry 20 pounds occasionally and 10 pounds frequently, he can stand or walk for six hours of an eight hour workday, he can sit for six hours of an eight hour workday, he can frequently push and pull, he can frequently grasp, and he requires a sit or stand option." *Id.* The ALJ did note that plaintiff

---

[8]*Muse*, 925 F.2d at 789.

was 48 years of age at the alleged onset date which is defined as "a younger individual age 28-49," but not that plaintiff had turned fifty by the time of the decision. (Tr. 14). He found that plaintiff is unable to perform any past relevant work, has at least a high school education and can communicate in English. (Tr. 14). The ALJ relied on evidence in the record, primarily non-examining consulting physicians, to conclude that plaintiff was capable of performing light exertional work and, therefore, was not disabled under the Social Security Act. (Tr. 15).

## DISCUSSION

Plaintiff contends on appeal that the ALJ's failure to properly evaluate the severity of all of plaintiff's medically-established impairments at Step 2 resulted in a decision that was unsupported by the evidence. Docket 10, p. 1. Specifically, plaintiff argues that his radiculopathies and his cervical herniations are each separate impairments which should have been considered apart from his degenerative disc disease. *Id.* at 2. Plaintiff finds error in the ALJ's conclusion that plaintiff did not suffer from bilateral carpal tunnel syndrome despite EMG/NCS results, which revealed that he had Grade III/IV carpal tunnel syndrome on the left side and Grade II/IV carpal tunnel syndrome on the right side. *Id.* According to the plaintiff, the ALJ's failures to consider the radiculopathies and cervical herniations separately, to consider the carpal tunnel syndrome at all, and to determine that all three are severe impairments resulted in findings at Step 3 through 5 that were unsupported by substantial evidence. The court agrees with the plaintiff.

The court concludes that the ALJ failed to consider all of plaintiff's impairments in violation of 20 CFR § 404.1545 and 20 CFR § 416.945, which specify that the ALJ "will consider all of [plaintiff's] medically determinable impairments of which [the ALJ is] aware,

5

including [plaintiff's] medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when [assessing plaintiff's] residual functional capacity." He did not consider properly plaintiff's radiculopathies and cervical herniations. And although he mentioned plaintiff's claimed carpal tunnel syndrome, he did not provide sufficient explanation – especially in light of objective test results – for why he did not consider it a "medically determinable impairment."

The ALJ summarily dismissed plaintiff's bilateral carpal tunnel syndrome as "not a medically determinable impairment." (Tr. 10). Instead of crediting the positive objective EMG/NCS test results – which showed mild to moderate carpal tunnel syndrome on the right side and moderate to severe carpal tunnel syndrome on the left side (Tr. 228) – or even explaining why he declined to do so, the ALJ chose to simply adopt the impression of Dr. Pomphrey, an orthopedic surgeon who saw plaintiff approximately three weeks after the EMG/NCS. (Tr. 212). The Commissioner argues that the physical examinations conducted by other physicians, including Dr. Pomphrey, did not support a finding of carpal tunnel syndrome. Docket 9, at 12. While this may be true, the ALJ provided no explanation for why he disregarded a neurological study that is medically accepted as the method for diagnosing carpal tunnel syndrome and chose instead to give "great weight" to Dr. Pomphrey's opinion. (Tr. 10). The ALJ failed to give good reasons for his failure to consider and properly evaluate the severity of the carpal tunnel syndrome, thus resulting in his evaluation of plaintiff's RFC being unsupported by substantial evidence and the ultimate conclusion as to disability being unsupported by substantial evidence. *Costanza v. Astrue*, 2007 WL 4699149 (W.D. La. Nov. 29, 2007) (holding failure to base RFC on sufficient medical opinions results in the ultimate decision

being unsupported by substantial evidence).

Plaintiff alleges that the ALJ should have found that his lumbar radiculitis, cervical radiculitis and degenerative disc disease in the AC joint were separate severe impairments at Step 2. The Commissioner asserts that these "impairments were accounted for in his broader finding that plaintiff had severe degenerative disc disease," and that "the ALJ's restriction of Plaintiff to a limited range of light work accommodated any limitations caused by spinal radiculitis and AC joint disease." [Docket 9, at 12]. While it may be true that the ALJ intended to cover all of these impairments in his broad finding that plaintiff suffers from severe degenerative disc disease, the court is not at liberty to read into the ALJ's decision facts that are not stated or otherwise intuit his thoughts on this issue. If the ALJ intended for the term "degenerative disc disease" to include the lumbar radiculitis, cervical radiculitis and degenerative disc disease in the AC joint, he should have said that. "In determining whether a claimant's physical or mental impairments are of a sufficient medical severity as could be the basis of eligibility under the law, the [ALJ] is required to consider the combined effects of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. [He] must consider all of the evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). He is required to "analyze both the disabling effect of each of the claimant's ailments and the combined effect of all of these impairments." *Id.* at 399. Because it is not clear that the ALJ considered all of plaintiff's impairments, either separately or in combination, the court finds that his ultimate conclusion was not supported by substantial evidence.

Of particular interest is the fact that the ALJ relied on the opinions of three state agency

7

medical consultants that have never examined plaintiff, much less treated him, to support his findings. (Tr. 13). Of the three state agency physicians, only one prepared a report, and the remaining two simply advised that they agreed with the first consultant's opinion without providing any further analysis. (Tr. 279, 250-57, 280-81). The ALJ assigned great weight to the opinions of Dr. Lowe, a consultative examiner who did evaluate the plaintiff in person. *Id.* However, Dr. Lowe was not provided all of medical records that were available to the ALJ. (Tr. 348-53). There do not appear to be any Medical Source Statements in the record from any of plaintiff's treating physicians. In other words, the ALJ relied upon the opinions of non-examining state agency medical consultants and one consultative examiner who did not have all of plaintiff's medical records to consider, yet did not request that any of plaintiff's treating physician's weigh in on his functional capacity.

"Without reports from qualified medical experts, a court cannot determine the effects of a claimant's conditions, no matter how small, on his ability to perform work; consequently, without reports from qualified medical experts, the court cannot agree that substantial evidence supports the conclusion that a claimant is not disabled." *Parmer v. Commissioner of Social Security*, 2008 U.S. Dist. LEXIS 70297, *9 (E.D. Tex., Tyler Div. Sept. 8, 2009), citing *Ripley v. Chater*, 67 F.3d 552, 557, n.27 (5th Cir. 1995). Some courts have held that "[m]edical reports that are not based on personal observation 'deserve little weight in the overall evaluation of disability.'" *Hilsdorf v. Commissioner of Social Security*, 2010 WL 2836374, at *13 (E.D.N.Y. July 15, 2010), citing *Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990); see also *Filocomo v. Chater*, 944 F.Supp. 165, 170 (E.D.N.Y. 1996) (reliance on RFC assessment "completed by a doctor who never physically examined Plaintiff" would be "unfounded, as the

8

conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight."). The record in this case does not contain any opinion from any of plaintiff's treating physicians regarding his functional abilities during the relevant period. An RFC assessment from plaintiff's treating sources was especially important in this case given that the only examining physician who did provide any such opinions, Dr. Lowe, did not have all of the plaintiff's medical records when he formed his opinions. Based upon a review of the non-examining state-agency physician's Functional Capacity Assessment form, it does not appear that he had any treating or examining source statements to review or consider in formulating his opinion. (Tr. 250-57). Given that the three state-agency consulting physicians never examined the plaintiff, and Dr. Lowe did not have all of plaintiff's records, the opinions of these physicians can hardly be considered proper medical evidence from qualified medical experts. By failing to support his RFC determination with proper expert medical evidence, preferably from at least some of plaintiff's treating physicians, the ALJ committed legal error.

Reading the record as a whole, the court concludes that the ALJ's opinion is unsupported by substantial evidence and should be remanded for further consideration. An ALJ has a duty to contact a treating physician or other medical source "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations also provide that the Commissioner "*will* seek additional evidence or clarification from your medical source when the report from the medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1) & 416.912(e)(1) (emphasis

9

the court's).

A treating physician such as Dr. Ilercil, who has operated on the plaintiff and has recommended additional surgery, has a unique perspective regarding the plaintiff's abilities, limitations, medical history and diagnosis. At the very least, the ALJ should have obtained an opinion from one of the plaintiff's many treating physicians concerning his impairments and his abilities to perform functions necessary to work. There is no issue as to whether the ALJ accorded the proper weight to the treating physicians versus non-treating sources because he chose not to obtain *any* opinions from *any* of the treating physicians. It is clear that additional development of the record, specifically in the form of opinions from the treating physicians, could have been easily obtained, and probably would have been helpful, had the ALJ sought such information. In such a case as this, where the ALJ wishes to rely on a non-examining physician and an examining, but non-treating, physician who has incomplete medical records, the Commissioner should contact the treating physician. The undersigned holds that the decision of the Commissioner should be remanded for further proceedings consistent with this opinion.

## PLAINTIFF'S REMAINING ARGUMENTS

This action will be remanded to the ALJ for (1) further explanation of why all of the plaintiff's impairments do not combine to meet a listing and (2) specification of the reasons for disregarding the clinical evidence supporting carpal tunnel syndrome as a severe impairment. Additionally, the ALJ is instructed to obtain Medical Source Statements which include functional assessments from at least the plaintiff's primary treating physicians. Because the court is remanding for further consideration of these issues, the court need not address the merits of the plaintiff's remaining arguments at this time.

## **CONCLUSION**

A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 27th day of October, 2010.

                                                /s/ S. Allan Alexander
                                            UNITED STATES MAGISTRATE JUDGE